FILED
United States Court of Appeals
Tenth Circuit

January 9, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 07-6281

JASON A. DEJEAR,

Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:07-CR-00032-R-1)**

---

Paul Antonio Lacy, Assistant Federal Public Defender, Oklahoma City, Oklahoma,
for the Defendant-Appellant.

Edward J. Kumiega, Assistant United States Attorney (John C. Richter, United
States Attorney with him on the brief), Oklahoma City, Oklahoma, for the
Plaintiff-Appellee.

---

Before **HENRY**, Chief Judge, and **BRISCOE**, and **LUCERO**, Circuit Judges.

---

**HENRY,** Chief Judge.

---

On January 8, 2007, Oklahoma City police officers discovered a handgun and marijuana in a car in which the defendant Jason DeJear was sitting. The government subsequently charged Mr. DeJear with firearm and drug offenses, and a jury convicted him of (1) possession of marijuana (a violation of 21 U.S.C. § 841(a)(1)); and (2) possession of a firearm after a felony conviction (a violation of 18 U.S.C. § 922(g)(1)). The district court sentenced him to concurrent terms of 24 months (on the possession of marijuana count) and 120 months (on the possession of a firearm count), followed by a three-year term of supervised release.

In this appeal, Mr. DeJear argues that the district court erred in denying his motion to suppress the evidence that the officers discovered in the car because they (1) lacked reasonable suspicion to detain him; (2) failed to administer <u>Miranda</u> warnings before questioning him; and (3) failed to obtain a warrant before searching the car. We are not persuaded by these arguments and therefore affirm Mr. DeJear's convictions.

## I. BACKGROUND

The relevant facts are not disputed. On January 8, 2007, Oklahoma City Police Officers Morrison, Stephens, and Doyle were on patrol in the Springlake district of Northeast Oklahoma City in three separate cars. At about 4:55 p.m., the officers drove by 2305 N.E. 22nd Street. According to the officers, that house was at an intersection that had a history of criminal activity.

As they approached the house, the officers saw three people sitting in a Chevrolet Caprice in the driveway. They parked their patrol cars, and Officer Morrison walked toward the Caprice. He noticed a man in the backseat on the passenger side holding a baseball bat in his hands. Mr. DeJear was sitting sideways in the front passenger seat, with the door open and his feet outside the door.

According to Officer Morrison, Mr. DeJear then looked at him "in a very nervous state." Rec. vol. II, at 28 (Tr. of April 26, 2007 Hr'g). In Officer Morrison's words, "[Mr. DeJear's] eyes widen. He takes his hands–in the back part of the front seat towards the bottom, he starts stuffing both hands down there in a very erratic and nervous state. He keeps looking up at me." Id.

Officer Morrison asked Mr. DeJear to show his hands. When Mr. DeJear did not comply, Officer Morrison drew his weapon and yelled the command for Mr. DeJear to show his hands. When Mr. DeJear again did not comply, Officer Morrison yelled the command again. At that point, Mr. DeJear complied–showing the officer his hands. Officer Morrison asked what Mr. DeJear had been stuffing, and Mr. DeJear replied, "Some weed." Id. at 31.

The officers arrested Mr. DeJear, placed him in handcuffs, and searched his car. They found four bags of marijuana and a gun.

In February 2007, a federal grand jury returned a three-count indictment against Mr. DeJear, charging him with (1) possession of marijuana with intent to

distribute it; (2) possession of a firearm in furtherance of a drug trafficking crime; and (3) being a felon in possession of a firearm.  Prior to trial, Mr. DeJear filed a motion to suppress.

In support of his motion, Mr. DeJear argued that Officer Morrison lacked reasonable suspicion to detain him (by pointing his gun at him and telling him to show his hands).  Secondly, he argued that Officer Morrison violated his Fifth Amendment rights by asking him the question about what he was stuffing without first giving Mr. DeJear proper Miranda warnings.  Finally, Mr. DeJear contended that the officers' search of the car (which revealed the marijuana and the gun) violated the Fourth Amendment because it was conducted without a warrant.

The district court rejected all three arguments.  As to the initial detention, the district court said:

> Before he could initiate the voluntary contact, the encounter escalated into a Terry stop.  Officer Morrison noticed [Mr. DeJear's] unusual actions, the stuffing of an item or items into the space between the seat back and the seat bottom, and his nervousness. [Mr. DeJear's actions] coupled with his refusal to show his hands, considered in conjunction with Officer Morrison's knowledge regarding the high incidence of crime, including the dealing of narcotics, in this area, were sufficient to give Officer Morrison reasonable suspicion that [Mr. DeJear] was engaged in criminal activity.

Rec. vol. I, doc. 20, at 3-4 (Order filed April 30, 2007).

Second, as to Officer Morrison's question about "stuffing," the district court applied the exception to Miranda set forth in New York v. Quarles, 467 U.S. 649 (1984).  The district court stated that, in Quarles, "the Supreme Court crafted a

'narrow exception' so that in certain situations a police officer may question a suspect in custody before giving a Miranda warning without running afoul of the constitution." Rec. vol. I, doc. 20, at 4-5. In order to fall within the exception, the question must arise out of "an objectively reasonable need to protect the police or the public from any immediate danger associated with [a] weapon." Id. at 5 (quoting Quarles, 467 U.S. at 659 n.8). "The exception allows officers to 'follow their legitimate instincts when confronting situations presenting a danger to the public safety." Id. (quoting Quarles, 467 U.S. at 659). In the Supreme Court's view, "'[w]e think police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect.'" Id. (quoting Quarles, 467 U.S. at 658-59).

Applying Quarles to the facts here, the district court found:

> The question asked by Officer Morrison addressed a real and substantial risk to the safety of the officers. Indeed, although [Mr. DeJear] did not admit to stuffing a gun, there was a handgun in the car, available to the other occupants to be used against the officers.

Id. at 5.

Finally, the court ruled that because there was probable cause to arrest Mr. DeJear (once he admitted that he was stuffing "some weed" into the seat), there was probable cause to search the car and no warrant was needed. The court relied on the Supreme Court's holding in Thornton v. United States, 541 U.S. 615, 623 (2004) that "'[o]nce an officer determines that there is probable cause to make an

arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment.'" Rec. vol. I, doc. 20, at 6 (quoting Thornton, 541 U.S. at 623).

After the district court denied the motion to suppress, the case proceeded to trial. A jury acquitted Mr. DeJear of the first two counts of the indictment (possession of marijuana with the intent to distribute and possession of a firearm in furtherance of a drug trafficking crime). It convicted him of the lesser-included offense of possession of marijuana and being a felon in possession of a firearm.

The district court sentenced Mr. DeJear to a term of 24 months' imprisonment on the possession of marijuana count and to a concurrent term of 120 months' imprisonment on the felon-in-possession count. The court also imposed concurrent terms of one and three years' supervised release.

## II. DISCUSSION

Mr. DeJear now argues that the district court erred in denying his motion to suppress. In reviewing the district court's decision, we examine its factual findings for clear error and view the evidence in the light most favorable to the government. See United States v. Patterson, 472 F.3d 767, 775 (10th Cir. 2006). We review de novo the reasonableness of a search or seizure under the Fourth Amendment. United States v. Lyons, 510 F.3d 1225, 1234 (10th Cir. 2007). The credibility of witnesses, the weight accorded to evidence, and the reasonable

-6-

inferences drawn therefrom fall within the province of the district court. United States v. Kimoana, 383 F.3d 1215, 1220 (10th Cir. 2004).

## A.  Reasonable Suspicion for the Initial Detention

Mr. DeJear first argues that Officer Morrison lacked reasonable suspicion to detain him.  He observes that the officer had not received any information indicating that illegal activity was occurring.  Moreover, as they first approached the scene, none of the officers saw anything suspicious.  "In sum, officers saw three people in a car lawfully parked in a private residence in a high crime area." Aplt's Br. at 18.

Mr. DeJear acknowledges that Officer Morrison saw him make stuffing movements toward the seat.  But, he contends, these furtive movements were also insufficient to establish reasonable suspicion.  He cites a Tenth Circuit decision, United States v. Humphrey, 409 F.2d 1055, 1059 (10th Cir. 1969), which contains the statement that "the allegedly furtive movements alone establish nothing."  Mr. DeJear also invokes a district court case, United States v. Smith, 614 F. Supp. 25, 28 (D. D.C. 1984), in which an officer saw a driver make furtive movements as though trying to hide something under the seat.  Mr. DeJear observes that the furtive movements were viewed by the D.C. district court as part of the totality of the circumstances that supported reasonable suspicion but that the furtive movements were not sufficient, standing alone, to establish such suspicion.

Mr. DeJear's arguments are not persuasive. Under the Fourth Amendment, an investigative detention such as the one that occurred here is reasonable if it is (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Johnson, 364 F.3d 1184, 1189 (10th Cir. 2004) (internal quotation marks and citations omitted). A detention is justified at its inception if "the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime." United States v. Werking, 915 F.2d 1404, 1407 (10th Cir. 1990) (discussing Terry v. Ohio, 392 U.S. 1 (1968)). "[I]nchoate suspicions and unparticularized hunches" are not sufficient. United States v. Lyons, 510 F.3d 1225, 1237 (10th Cir. 2007) (internal quotation marks omitted). Nevertheless, "the level of suspicion required for reasonable suspicion is 'considerably less' than proof by a preponderance of the evidence or that required for probable cause." United States v. Lopez, 518 F.3d 790, 799 (10th Cir. 2008) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

Here, as the district court reasoned, the totality of the circumstances provided the officers with a reasonable suspicion to detain Mr. DeJear. In particular, before the detention began (by Officer Morrison telling Mr. DeJear to show his hands), the officer observed that Mr. DeJear appeared nervous and that he had begun stuffing both hands down into the car seat as though he was trying to

-8-

conceal something. In addition, the house was in an area known for criminal activity, and, on previous occasions, Officer Morrison had seen people standing outside of it wearing colors affiliated with local gangs. Rec. vol. II, at 21 Moreover, Officer Morrison saw the backseat passenger was holding an object that could be used as a weapon–a baseball bat. Furtive movements, nervousness, and the fact that conduct occurs in an area known for criminal activity are all appropriate factors to consider in determining whether reasonable suspicion exists. See United States v. Bullock, 510 F.3d 342, 348 (D.C. Cir. 2007) (stating that "furtive gestures in response to the presence of the police can serve as the basis of an officer's reasonable suspicion") (internal quotation marks omitted), cert. denied, 128 S. Ct. 2095 (2008); United States v. Dennison, 410 F.3d 1203, 1208 (10th Cir. 2005) ("[The defendant's] presence in a high-crime area is not, standing alone, enough to provide reasonable suspicion, but it may be a relevant contextual consideration in a Terry analysis.") (internal quotation marks omitted); Johnson, 364 F.3d at 1192 ("[N]ervousness, even if it may be a normal reaction, is still among the pertinent factors a reasonable law enforcement officer would analyze in investigating possible crimes and should not be completely disregarded."); United States v. Paulino, 850 F.2d 93, 98 (2d Cir. 1988) (concluding that "furtive movement provided a legal basis for the protective search").

Accordingly, the district court properly concluded that Officer Morrison had reasonable suspicion to detain Mr. DeJear.

## B. Questioning Without Miranda Warnings

Next, Mr. DeJear argues that Officer Morrison violated his Fifth Amendment rights by asking him what he was stuffing in the car without first giving him the proper <u>Miranda</u> warnings. Again, we are not persuaded by his arguments.

As we have noted, the district court rejected this argument by applying <u>New York v. Quarles</u>, 467 U.S. 649 (1984). Under <u>Quarles</u>, an officer may question a suspect in custody without first giving the <u>Miranda</u> warnings if the questions arise out of "an objectively reasonable need to protect the police or the public from any immediate danger associated with a weapon." <u>Id.</u> at 659 n.8.

This circuit has applied the <u>Quarles</u> public safety exception to allow an officer to ask a suspect, "Do you have any guns or sharp objects on you," without first giving the <u>Miranda</u> warnings. <u>United States v. Lackey</u>, 334 F.3d 1224, 1225 (10th Cir. 2003). We reasoned that the question "addressed a real and substantial risk to the safety of the officers and Defendant: If Defendant was carrying such an item, he could use it against the officers or, perhaps more likely, someone could be seriously injured when Defendant, who was already under arrest, was routinely searched or frisked." <u>Id.</u> at 1227 (emphasis deleted); <u>cf.</u> <u>United States v. Holt</u>, 264 F.3d 1215, 1226 (10th Cir. 2001) (en banc) (holding that, during a routine traffic stop, an officer may ask whether loaded weapons are present "[g]iven the dangers inherent in all traffic stops"). However, we have not yet adopted a generally

applicable standard for determining whether a sufficient threat to officer safety exists under Quarles.

In contrast, the Sixth Circuit has announced such a standard. Under Quarles's public safety exception, "[f]or an officer to have a reasonable belief that he is in danger, at minimum, he must have a reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." United States v. Williams, 483 F.3d 425, 428 (6th Cir. 2007). We agree with the Sixth Circuit's formulation and apply it here.

Mr. DeJear contends that the Quarles exception is not applicable because "all the occupants of the vehicle had their hands raised with firearms pointed at them." Aplt's Br. at 23. In our view, that argument unfairly minimizes the potential dangers confronted by the police officers here. When Officer Morrison asked Mr. DeJear what he was stuffing into the seat, Mr. DeJear had twice refused to show his hands, as Officer Morrison had requested. The combination of Mr. DeJear's attempts to stuff something into the seat and his initial refusal to comply with the officer's request to show his hands established objectively reasonable grounds for the officers to believe that Mr. DeJear (1) "might have (or recently have had) a weapon" and that "someone other than police might gain access to that weapon and inflict harm with it." Williams, 483 F.3d at 428. Thus, under Quarles, Officer

-11-

Morrison could ask Mr. DeJear about what he was stuffing without first administering the proper <u>Miranda</u> warnings.

### C. Warrantless Search of the Car

Finally, Mr. DeJear argues that even after he stated that there was "some weed" in the car, the police could still not search the car without first obtaining a warrant. He maintains that "the warrant requirement applies to vehicles in private driveways." Aplt's Br. at 25.

Mr. DeJear's argument is not persuasive. Since <u>Carroll v. United States</u>, 267 U.S. 132, 153 (1925), the Supreme Court has recognized an exception to the Fourth Amendment's warrant requirement when there is probable cause that a car contains contraband. <u>See</u> <u>California v. Carney</u>, 471 U.S. 386, 392 (1985); <u>Cardwell v. Lewis</u>, 417 U.S. 583, 590 (1974). The exception is based upon (a) mobility (which makes the delay imposed by the warrant requirement too great an obstacle to effective law enforcement) and (b) reduced expectations of privacy. <u>Carney</u>, 471 U.S. at 390-93; <u>United States v. Mercado</u>, 307 F.3d 1226, 1228 (10th Cir. 2002). The police may also search an automobile's passenger compartment without first obtaining a warrant if there is probable cause to arrest one of its occupants. <u>See</u> <u>Thornton</u>, 541 U.S. at 623 (stating that "[o]nce an officer determines that there is probable cause to make an arrest [of an occupant of an automobile], it is reasonable

-12-

to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment").

We acknowledge that some courts have concluded that "the automobile exception [to the warrant requirement] may not apply when it is parked at the residence of the criminal defendant challenging the constitutionality of the search." United States v. Fields, 456 F.3d 519, 524-25 (5th Cir. 2006).  However, Mr. DeJear does not contend that the car was parked outside his residence.  As a result, the principle set forth in Thornton establishes that the search of the car comported with the Fourth Amendment.  In particular, once Mr. DeJear told Officer Morrison that he was stuffing "some weed" into the seat, there was probable cause to arrest Mr. DeJear.  Thus, the police could search the passenger compartment without first obtaining a warrant.

## III.  CONCLUSION

We therefore AFFIRM Mr. DeJear's convictions.