UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSEPH EARL CARROLL,

Defendant-Appellant.

No. 11-2181
(D.C. No. 1:10-CR-03237-LH-1)
(D. New Mexico)

ORDER AND JUDGMENT[*]

Before **KELLY**, **SEYMOUR** and **MURPHY**, Circuit Judges.

Joseph Earl Carroll appeals the denial of his motion to suppress. Because police had reasonable suspicion to detain him, we affirm.

According to evidence presented at the suppression hearing, on November 5, 2010 at approximately 2:16 p.m., Albuquerque Police Officer Luis Castaneda was dispatched to the parking lot of an apartment complex in response to a 911 call. Information from the 911 call was relayed to the officer through the

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

computer assisted dispatch screen in his patrol car. Officer Castaneda was notified that a suspicious male in a black Corsica had been sitting in the parking lot off and on for two or three days. Dispatch described the suspect as a 35 year-old black male. The dispatch screen also reflected that the 911 caller asked to remain anonymous, but it provided the caller's phone number and address.

Officer Castaneda testified that the apartment complex is in a high crime area. He had previously responded to calls in the area involving stabbings, shootings, prostitution, domestic violence, assaults, batteries, robberies, and drug trafficking. When he pulled into the parking lot in his marked patrol car, he saw a black Corsica that had backed into the lot and parked crookedly. The officer testified the position of the vehicle was very suspicious because it was tactically parked in a manner that allowed anyone in the car to monitor the parking lot and street and to leave the parking lot quickly, obstructed visibility of the car's license plate, and provided cover against gunfire. The car had tinted windows, so the officer could not see how many people were inside.

As Officer Castaneda pulled into the parking lot, an individual later identified as Mr. Carroll quickly exited the Corsica through the rear passenger-side door. Mr. Carroll matched the description of the suspect. Officer Castaneda believed the speed at which Mr. Carroll exited the car indicated he was either going to flee or was trying to separate himself from something occurring inside the car. The officer exited his patrol car, unholstered his gun, and told Mr.

Carroll to sit on the curb. Instead of complying, Mr. Carroll took a step back towards the car and claimed to have left a lit cigarette in the car. The officer again told Mr. Carroll, "'Take a seat on the curb.'" Rec., vol. III at 17. Mr. Carroll continued toward the Corsica. The officer, with a raised voice, said "'Take a seat on the curb now.'" *Id.* After this third command, Mr. Carroll sat.

Mr. Carroll was arrested when a warrants check of his driver's license showed three outstanding misdemeanor warrants for his arrest. A search incident to arrest revealed six 9mm bullets in Mr. Carroll's pocket. Additional ammunition and a firearm were found during an inventory search of the Corsica before it was towed.

In reviewing a district court's denial of a motion to suppress, we examine its factual findings for clear error and view the evidence in the light most favorable to the government. *United States v. Brown*, 496 F.3d 1070, 1074 (10th Cir. 2007). The ultimate question of whether a seizure was reasonable under the Fourth Amendment is a question we review de novo. *Id.* We also review the district court's determination of when a seizure occurs under the Fourth Amendment de novo. *United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010).

The district court properly held Mr. Carroll was not seized until he sat on the curb. "When an officer does not apply physical force to restrain a suspect, a Fourth Amendment seizure occurs only if (a) the officer shows his authority; and

(b) the citizen 'submit[s] to the assertion of authority.'" *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991)) (alteration in original).  For a seizure to occur, "a suspect must do more than halt temporarily; he must submit to police authority, for there is no seizure without actual submission." *Id.* at 1066 (internal quotation marks omitted).

"[W]e consider whether a citizen has submitted to authority by examining the view of a reasonable law enforcement officer under the circumstances." *Id.* at 1065.  Viewing the situation from the perspective of a prudent, cautious, and trained officer, *see id.*, Mr. Carroll's change in direction and steps toward the car did not constitute a submission to police authority.  Instead, he was directly disobeying the officer's command to sit on the curb.  He did not actually submit to authority, and therefore was not seized, until he complied with the officer's command and sat.  *Cf. United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) ("Mr. Martin's action of dropping his hands from sight, rather than placing them on the wall, suggested not compliance but its opposite.").

"Under the Fourth Amendment, an investigative detention such as the one that occurred here is reasonable if it is (1) justified at its inception and (2) reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (internal quotation marks omitted).  "A detention is justified at its inception if the specific and articulable facts and rational inferences drawn from those facts give

rise to a reasonable suspicion a person has or is committing a crime." *Id.* (internal quotation marks omitted).

As the district court correctly noted and Mr. Carroll concedes, "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (internal quotation marks omitted). Here, multiple factors lend the 911 call sufficient indicia of reliability to permit Officer Casaneda to rely on it. First, although the caller did not provide her name, she did not block her phone number and it also appeared that she lived in the apartment complex where the Corsica was parked. "The fact the caller provided authorities some basis for discovering [her] identity makes it . . . less likely [her] tip was phony." *United States v. Copening*, 506 F.3d 1241, 1247 (10th Cir. 2007); *accord Brown*, 496 F.3d at 1075-76. Second, the caller provided a first-hand, contemporaneous account of the suspicious behavior, which bolsters the reliability of the call. *See Copening*, 506 F.3d at 1247. During the call, she provided a detailed description of the duration and location of the suspicious activity, and described the car and the individual inside the car. Third, when the officer arrived at the scene, he was able to corroborate facts from the call: a car in the parking lot matched the description from dispatch and an individual matching the suspect's description was exiting from the car. Such corroboration lends additional reliability to the information provided by the 911

-5-

call. *See Brown*, 496 F.3d at 1077-78.

Officer Castaneda did not detain Mr. Carroll based solely on the anonymous tip, however. He noticed the Corsica was parked in a suspicious tactical position. Although a crooked parking job may seem innocuous to a lay person, we "should defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. Zubia–Melendez,* 263 F.3d 1155, 1162 (10th Cir. 2001) (quotation marks and citations omitted).

Mr. Carroll's actions upon the arrival of police also contributed to the officer's reasonable suspicion of criminal activity. Although flight alone does not create reasonable suspicion, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). This includes "unprovoked flight upon noticing the police." *Id.*; *see also DeJear*, 552 F.3d at 1201 ("Furtive movements, nervousness, and the fact that conduct occurs in an area known for criminal activity are all appropriate factors to consider in determining whether reasonable suspicion exists."). Not only did Mr. Carroll quickly try to leave the area upon arrival of the police, but he also initially failed to comply with Officer Castaneda's commands to sit on the curb. Instead, he repeatedly tried to go back to the car. This behavior gave the officer additional reason to suspect Mr. Carroll was engaged in criminal conduct. *See, e.g.*, *United States v. Wright*, 582 F.3d 199, 212 (1st Cir. 2009) (collecting cases

finding failure to comply with police commands supported reasonable suspicion); *cf. United States v. McHugh*, 639 F.3d 1250, 1258 (10th Cir. 2011) (defendant's defiant conduct in face of commands by private security guard was relevant to reasonable suspicion analysis). Finally, the incident occurred in a high crime area, which is relevant to the reasonable suspicion analysis. *See United States v. Clarkson*, 551 F.3d at 1196, 1201-02 (10th Cir. 2009) (citing *Wardlow*, 528 U.S. at 124).

Considering the totality of the circumstances, we agree with the district court that Officer Castaneda had reasonable suspicion to detain Mr. Carroll.

AFFIRMED.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge