FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

PHILIP MARTIN BENAVIDEZ, a/k/a
Phillip Martin Benavidez,

        Defendant - Appellant.

No. 12-1268
(D.C. No. 1:10-CR-00191-MSK-1)
(D. Colo.)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Circuit Judge, **SEYMOUR** and **BACHARACH**, Circuit
Judges.

Philip Benavidez, the defendant, was seen at about 11:00 p.m. in a parking

lot that had been identified as a frequent place for drug deals. At the time, Mr.

Benavidez was crouched next to another car and looking at something in a remote

section of the parking lot. The scene appeared suspicious to a police officer, and

he responded by temporarily detaining Mr. Benavidez and searching his person.

During the search, the officer discovered a gun. Mr. Benavidez moved to suppress

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

the gun, and the district court denied the motion. Under Supreme Court precedent, the stop and search were lawful if police had reasonable grounds to suspect Mr. Benavidez of a crime. Thus, we must ask: Did the police have reasonable grounds to suspect a crime? Holding that they did, we affirm.

## I. THE CRIMINAL PROCEEDINGS

Mr. Benavidez was charged under 18 U.S.C. § 922(g)(1) with possession of a firearm by a convicted felon. Mr. Benavidez moved to suppress evidence involving the gun, arguing that the initial stop was not supported by a reasonable and articulable suspicion as required by *Terry v. Ohio*.[1] The district court disagreed, holding that "the time of night, the location, the apparent lack of connection between the folks in the parking lot and the Safeway, and the fact that . . . the Safeway parking lot was known as an area where drug transactions occurred" gave rise to reasonable suspicion that criminal activity was afoot.[2] Mr. Benavidez pleaded guilty and appealed the denial of his motion to suppress.

## II. REASONABLENESS OF THE POLICE OFFICER'S SUSPICION

On appeal, Mr. Benavidez challenges the lawfulness of the stop. Evidence of the gun, he argues, is inadmissible as the fruit of an unlawful stop. We reject

---

[1]     392 U.S. 1 (1968).

[2]     R., vol. 1 at 153: 11-14.

2

this contention because the police were justified in stopping and temporarily detaining Mr. Benavidez.

A.    A *Terry* Stop and its Requirements

As Mr. Benavidez acknowledges, police officers may detain an individual for investigatory purposes when the totality of the circumstances creates reasonable suspicion of criminal activity.[3]  Brief investigatory stops—though exempt from the probable cause requirement—remain subject to the Fourth Amendment's general requirement that searches and seizures be reasonable.[4]  A stop is reasonable if it is justified at the start and reasonably related in scope to the circumstances that justified the stop in the first place.[5]

A stop is justified if the "specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion [that] a person has or is committing a crime."[6]  We view the facts in their totality, applying an objective standard to determine if a reasonable officer would have suspected a crime.[7]

---

[3]    *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

[4]    *Terry v. Ohio*, 392 U.S. 1, 20 (1968).

[5]    *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009).

[6]    *United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir. 1990).

[7]    *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Salazar*, 609 F.3d 1059, 1064-65 (10th Cir. 2010).

3

The officer need not "rule out the possibility of innocent conduct."[8] But he can initiate a detention only if he has a "particularized and objective basis" for suspecting criminal activity.[9] Hunches are not enough.[10]

B.    Reasonableness of the Suspicion

The district court held that the police officer could initiate an investigative detention because he had reasonable grounds to suspect Mr. Benavidez of a crime.[11] This holding involves a mixed question of law and fact, triggering *de novo* review.[12] In conducting this review, we consider the evidence in the light most favorable to the district court and uphold its factual findings unless they are clearly erroneous.[13] "In practice, this looks more like deference—indeed, double deference—than *de novo* review."[14]

The police officer testified that:

●    the grocery store was closing at 11:00 p.m.,

---

[8]    *United States v. Arvizu*, 534 U.S. at 277.

[9]    *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *United States v. Trujillo*, 404 F.3d 1238, 1244 (10th Cir. 2005).

[10]    *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

[11]    R., vol. 1 at 153:19 - 154:3.

[12]    *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Santos*, 403 F.3d 1120, 1124 (10th Cir. 2005).

[13]    *United States v. Santos*, 403 F.3d 1120, 1124 (10th Cir. 2005).

[14]    *Unites States v. Santos*, 403 F.3d 1120, 1125 (10th Cir. 2005).

4

- Mr. Benavidez and another man were crouched near a car door, looking at something,

- the men were parked about 120 feet from the entrance of the grocery store, and

- the grocery store was known as a meeting place for drug deals.[15]

The district court relied on this testimony and made similar factual findings.[16] When these circumstances are viewed in the light most favorable to the district court's holding, a reasonable police officer would have suspected criminal activity.[17]

Perhaps in isolation, the circumstances might have seemed innocent. For example, the police might have viewed the scene differently if the store had not been closing, if the two men had been parked closer to the store entrance, if Mr. Benavidez had not been crouched and looking at something, or if the parking lot had not been known as a place for drug deals. But viewing the circumstances together, the district court concluded that Detective Bravo had specific articulable

---

[15]    *See* R., vol. 1 at 71, 73, 79.

[16]    *See* R, vol. 1 at 148, 153.

[17]    *See United States v. Conner*, 699 F.3d 1225, 1231 (10th Cir. 2012) (stating that the time of night and a substantial history of crime at the place where the stop had occurred affect reasonableness of the suspicion); *United States v. McHugh*, 639 F.3d 1250, 1257 (10th Cir. 2011) (stating that a report that men were "'lurking' around [a] parking lot" and "acting hinky" had added to the circumstances creating reasonable suspicion for a *Terry* stop).

facts to harbor a reasonable suspicion that a crime was in progress.[18]  Considering the evidence in the light most favorable to the district court's resolution, we agree and affirm.

Entered for the Court

Robert E. Bacharach
Circuit Judge

---

[18]    *See* R., vol. 1 at 153.