**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TRAVONN LEON BURTONS,

    Defendant - Appellant.

No. 13-6234
(D.C. No. 5:11-CR-00126-R-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, **PHILLIPS** and **MORITZ**, Circuit Judges.

During a drug investigation, police officers detained and questioned Appellant

Travonn Leon Burtons. After a positive drug dog alert, they searched his car and located

a firearm. Police also obtained a search warrant and searched a storage unit he rented,

finding firearms and ammunition. Based on the evidence seized, a federal grand jury

charged Mr. Burtons with one count of being a felon in possession. Mr. Burtons filed a

motion to suppress, contending the police seized evidence in violation of the Fourth

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Amendment. At the suppression hearing, he also alleged the police had elicited his statement about the gun in his car in violation of the Fifth Amendment.

The district court denied his motion. He then entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. Mr. Burtons now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Factual Background*

#### 1. Police Search Nathaniel Burtons's Home

On October 6, 2010, the Oklahoma City Police Department ("OCPD") and the Drug Enforcement Agency ("DEA") executed a search warrant at a house owned by Mr. Burtons's brother, Nathaniel Burtons ("Nathaniel"). Officers found approximately three ounces of cocaine and five grams of marijuana, a scale containing drug residue, a large amount of cash, and various documents, including a receipt for a storage unit at Rite Place Storage registered to Mr. Burtons. The police arrested Nathaniel.

The police also arrested Robbie Roberson, who was at the house during the search. DEA Agent Mark Wolf interviewed Mr. Roberson, who admitted to being a drug courier. He said he had made four trips between July 2010 and October 2010 from Los Angeles to Oklahoma City to deliver drugs to Nathaniel's house. Mr. Roberson asserted Mr. Burtons and Nathaniel were drug trafficking partners and multi-kilogram cocaine dealers. He also stated he delivered a coffee can containing cocaine to Nathaniel two days earlier.

-2-

He saw Mr. Burtons pick up the coffee can and give Nathaniel $500 to pay Mr.

Roberson's courier fee. Mr. Roberson had $511 in cash at his arrest.

## 2. **Police Investigate Storage Unit**

That evening, OCPD Officer Jeff Springer visited the Rite Place Storage facility

listed on the receipt found at Nathaniel's house. He located the storage unit listed on the

receipt and informed the facility's manager he was investigating the renter of the unit.

Officer Springer was unable, however, to procure a canine unit to smell the storage unit,

so he left.

The next morning, at approximately 8:30 a.m., Officer Springer and OCPD

Officer Roy Williams returned to Rite Place Storage and called for a canine unit. At

about 9:15 a.m., OCPD Detective Richie Willis arrived with his certified drug dog. The

dog swept the unit but did not alert to the presence of drugs.[1]

The officers returned to the front office, where they reviewed the rental agreement

and the activity log associated with the unit. The rental agreement, which was signed on

July 6, 2010, confirmed Mr. Burtons was the renter of the unit. The activity log revealed

Mr. Burtons had accessed the unit 23 times in the preceding three months, with

increasing access in the five weeks before the search of Nathaniel's house.

---

[1] At the suppression hearing, Officer Springer testified that Detective Willis informed him an alert was unlikely because the door to the unit was closed and the unit had no airflow.

3. **Mr. Burtons Arrives and Police Detain Him**

While the officers were in the front office, Mr. Burtons arrived at the facility and attempted to access his unit. He was unable to do so because the facility's manager had placed a company lock on the door. Mr. Burtons went to the front office to ask about the lock.

The facility's owner informed the officers Mr. Burtons had arrived. The officers left the office and met Mr. Burtons outside as he was entering a Honda Accord. Officer Springer approached the front driver's side door. He informed Mr. Burtons that he was not under arrest but was being detained for investigative purposes, and asked him to exit his vehicle. Mr. Burtons complied. Officer Springer frisked him and did not find any weapons.

Officer Springer called Detective Willis and asked him to return with his drug dog. While waiting for the canine unit to arrive, Officer Springer informed Mr. Burtons that he was going to have a drug dog sniff the car. He asked Mr. Burtons if the car contained anything that could harm the dog or its handler. Mr. Burtons replied there were no drugs in the vehicle, but he did have a gun in a computer case inside the vehicle. In light of this statement about the unsecured weapon in Mr. Burtons's vehicle and his knowledge of Mr. Burtons's criminal history, Officer Springer handcuffed Mr. Burtons.

Approximately 30 to 45 minutes later, Detective Willis returned with his drug dog. The dog sniffed the exterior of Mr. Burtons's car and alerted to the presence of illegal

drugs in the passenger compartment. Officers searched the vehicle. They located the gun in the computer case but did not find any drugs.

### 4. **Police Execute a Search Warrant on the Storage Unit**

Later that day, OCPD Officer Eric VanGurp applied for a search warrant for Mr. Burtons's storage unit. An Oklahoma state court judge issued the search warrant, which the officers executed. They found two rifles and ammunition.

### B. *Procedural Background*

### 1. **Indictment and Motion to Suppress**

On April 5, 2011, a federal grand jury indicted Mr. Burtons for one count of felon in possession of a firearm or ammunition in violation of 18 U.S.C. § 922(g)(1).

Mr. Burtons moved to suppress, arguing officers lacked reasonable suspicion to initiate the investigative detention and, as a result, the evidence seized during the search of his car, the statement he made during the detention, and the evidence seized from the storage unit were tainted. Mr. Burtons also challenged the search warrant for the storage unit as invalid under *Franks v. Delaware*, 438 U.S. 154 (1978), because the affiant, Officer VanGurp, knowingly or recklessly included false statements in and omitted material information from the affidavit in support of the warrant.

### 2. **District Court Order Denying Motion to Suppress**

After an evidentiary hearing, the district court denied Mr. Burtons's motion to suppress. First, it ruled reasonable suspicion supported Mr. Burtons's initial detention

because, based on the totality of the circumstances, Officer Springer had "a 'particularized and objective basis' for suspecting [Mr. Burtons] might be about to engage in legal wrongdoing on October 7, 201[0]." App. at 102.

Second, it concluded Mr. Burtons's statement about the gun was not obtained in violation of the Fifth Amendment because he was not "in custody" nor was he subject to "interrogation." App. at 105-06.

Third, the court concluded the dog sniff and subsequent search of the car were not unconstitutional because they occurred during a valid investigative detention, officers properly arrested Mr. Burtons after he admitted to possessing a firearm, and "a canine sniff of an already legitimately detained automobile is not a 'search' within the meaning of the Fourth Amendment." App. at 107 (quoting *United States v. Hunnicutt*, 135 F.3d 1345, 1350 (10th Cir. 1998)).

Finally, the court rejected Mr. Burtons's *Franks* challenge to the search warrant. It also concluded the search of the storage unit was proper because Mr. Burtons's rental agreement with Rite Place Storage precluded him from having a reasonable expectation of privacy in the unit and provided his consent to the search.

3. **Guilty Plea, Sentencing, and Appeal**

On June 21, 2011, Mr. Burtons pled guilty and was sentenced. The district court granted his motion for habeas relief under 28 U.S.C. § 2255 due to ineffective assistance of counsel and vacated his plea, sentence, and judgment.

On July 1, 2013, Mr. Burtons entered a conditional plea, reserving his right to appeal the court's denial of his motion to suppress. The district court sentenced him to 180 months in prison and four years of supervised release. Mr. Burtons timely appealed.

## II. **DISCUSSION**

On appeal, Mr. Burtons challenges the denial of his motion to suppress the evidence and statement obtained during his investigative detention, arguing: (1) the initial investigative detention was unjustified, (2) the frisk and canine sniff were beyond the scope of the detention, and (3) his statement made during the detention was elicited in violation of *Miranda* and the Fifth Amendment.

We conclude the officers had reasonable suspicion to detain Mr. Burtons. We decline to reach Mr. Burtons's challenge to the scope of his detention because he waived this argument by failing to raise it in the district court. We also decline to reach Mr. Burtons's *Miranda* challenge because, even if the statement were unlawfully obtained, no evidence was seized as a result of his statement.

Mr. Burtons also appeals the district court's rejection of his *Franks* challenge and its determination the rental agreement provided consent for officers to search his storage unit. Because Mr. Burtons was charged with only one count of felon in possession, and

because we determine the gun seized from his vehicle was lawfully obtained, we need not reach these issues.[2]

## A. *Standard of Review*

In reviewing "a district court's denial of a motion to suppress, we review de novo the district court's ultimate determination of reasonableness under the Fourth Amendment." *United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012). "[W]e accept the district court's factual findings unless they are clearly erroneous and we view the evidence in the light most favorable to the prevailing party." *Id.*

## B. *Legal Background*

The Supreme Court has identified three types of police-citizen contacts: consensual encounters, investigative detentions, and arrests. *United States v. Garcia*, 459 F.3d 1059, 1062-63 (10th Cir. 2006). An encounter is not consensual if "a reasonable person would not feel free to leave or disregard the contact" under the circumstances. *Lundstrom v. Romero*, 616 F.3d 1108, 1119 (10th Cir. 2010). Because both investigative detentions and arrests are nonconsensual, they are seizures for Fourth Amendment purposes and must pass constitutional muster. *See id.* at 1119-20.

An investigative detention occurs when police officers detain a person "for

---

[2] Mr. Burtons's counsel conceded this point at oral argument. *See* Oral Arg. At 12:44-12:54.

-8-

purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio,* 392 U.S. 1, 22 (1968).  An investigative detention is reasonable if it (1) is justified at its inception by "specific and articulable facts" that "give rise to a reasonable suspicion a person has or is committing a crime," and (2) is "reasonably related in scope to the circumstances which justified the interference in the first place."  *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009).  Although reasonable suspicion is a less rigorous standard than probable cause, it requires "more than an inchoate and unparticularized suspicion or hunch."  *United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011) (quotations omitted).

In determining whether reasonable suspicion exists, we consider the totality of the circumstances "rather than assessing each factor or piece of evidence in isolation."  *Id.* at 1256.  "Under this objective standard, we ask whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate."  *Id.* (quotations omitted).  Officers "need not rule out the possibility of innocent conduct" and may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."  *United States v. Arvizu*, 534 U.S. 266, 273, 277 (2002) (quotations omitted).

## C. *Analysis*

### 1. **The Initial Detention**

Mr. Burtons argues the initial detention violated the Fourth Amendment because Officer Springer lacked reasonable suspicion to detain him. We agree with the district court that Officer Springer had reasonable suspicion Mr. Burtons was engaging in criminal activity at the time he initiated the detention.

First, the receipt for the storage unit registered to Mr. Burtons found along with drugs, scales, and a large amount of money in Nathaniel's house the day before supported the detention. Officer Springer knew from training and experience that drug traffickers often store drugs, proceeds, and other evidence relating to their drug transactions in storage facilities. The activity logs bolstered the officer's suspicion. Further, Mr. Burtons attempted to access the storage unit the morning after his brother's house had been searched.

Second, Officer Springer knew Mr. Roberson provided Agent Wolf with information linking Mr. Burtons to drug-trafficking activity. Officer Springer reasonably relied on Mr. Roberson's statements because Mr. Roberson's identity was known, he claimed firsthand knowledge of Mr. Burtons's activities, and his statements implicated himself in criminal activity. *See United States v. Brown*, 496 F.3d 1070, 1075 (10th Cir. 2007) (explaining that information provided by a known informant is more reliable than information from an anonymous source); *United States v. Jenkins*, 313 F.3d 549, 554-55

(10th Cir. 2002) (explaining informant's allegations were sufficiently reliable when the informant claimed to have personally witnessed defendant's drug transactions and assisted in preparing drugs for distribution).

Third, Officer Springer could reasonably consider Mr. Burtons's prior criminal history of drug offenses because "[w]hile knowledge of a person's prior criminal involvement is not sufficient itself to even rise to the level of reasonable suspicion, it can combine with other factors to support the requisite standard of suspicion. *United States v. West*, 219 F.3d 1171, 1179 (10th Cir. 2000).

We conclude Officer Springer had reasonable suspicion to detain Mr. Burtons.

2. **Issues Not Addressed**

*a. Scope of detention*

Mr. Burtons also argues the scope of the detention exceeded its initial justification. He contends Officer Springer did not have reasonable suspicion to frisk him or to detain him an additional 30 to 45 minutes to wait for the canine unit to arrive. Mr. Burtons, however, failed to make these arguments in the district court. He argued only that the initial detention was unlawful and tainted the subsequently discovered evidence.

"When a motion to suppress evidence is raised for the first time on appeal, we must decline review." *United States v. Hamilton*, 587 F.3d 1199, 1213 (10th Cir. 2009)

(quotations omitted). Under Federal Rule of Criminal Procedure 12(e), "[a] party waives any Rule 12(b)(3)[3] defense, objection, or request not raised by the [pre-trial] deadline," absent a showing of good cause. Fed. R. Crim. P. 12(e). "[T]his waiver provision applies not only to the failure to make a pre-trial motion, but also the failure to include a particular argument in the motion." *United States v. Dewitt*, 946 F.2d 1497, 1502 (10th Cir. 1991). We conclude Mr. Burtons has waived these arguments he failed to raise in the district court.

*b. Statement about the gun*

Mr. Burtons argues the statement he made about the gun in the vehicle was obtained in violation of his *Miranda* rights. Mr. Burtons raised this issue for the first time at the evidentiary hearing—not in his motion to suppress—which alone may be grounds for deeming Mr. Burtons's argument waived on appeal. Nonetheless, we need not address this issue because, even if Mr. Burtons's statement were obtained in violation of *Miranda*, the gun was discovered as a result of the drug dog's alert, not Mr. Burtons's statement. The gun from the car is sufficient to affirm Mr. Burtons's conviction.

c. *Search warrant challenge*

Mr. Burtons also challenges the district court's rejection of his *Franks* challenge

---

[3] Federal Rule of Criminal Procedure 12(b)(3)(C) requires a motion to suppress evidence to be raised before trial.

and its determination the rental agreement provided consent for officers to search his storage unit. We decline to reach these issues because Mr. Burtons was charged with only one count of being a felon in possession, and the firearm seized from his vehicle is sufficient to affirm his conviction. *See* 18 U.S.C. 922(g)(1). Further, Mr. Burtons was sentenced to the statutory minimum of 180 months for his conviction. *See* 18 U.S.C. § 924(e)(1). Any additional firearm and ammunition seized from Mr. Burtons's storage unit would have no further impact on his conviction or sentence. *See United States v. Torres*, 182 F.3d 1156, 1164 n.4 (10th Cir. 1999) (explaining principles of judicial restraint prevent us from addressing an issue that is unnecessary to the outcome of the case). As noted previously, *supra* note 2, counsel for Mr. Burtons conceded we need not reach the issues regarding the search of the storage unit if we affirm on the detention issue.

## III. **CONCLUSION**

For the foregoing reasons, we affirm the district court.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge