FILED
United States Court of Appeals
Tenth Circuit

July 9, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

KENNETH MIKOLON,

  Defendant - Appellant.

No. 12-2139

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 2:11-CR-01947-MV-1)**

---

Andre C. Poissant, Assistant Federal Public Defender, Las Cruces, New Mexico, for Defendant - Appellant.

Jennifer M. Rozzoni, Assistant United States Attorney (and Kenneth J. Gonzales, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

---

Before **KELLY**, **GORSUCH**, and **BACHARACH**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendant-Appellant Kenneth Mikolon entered a conditional plea of guilty to one count of possession of a firearm by a fugitive, 18 U.S.C. §§ 922(g)(2), 924(a)(2), reserving the right to appeal the denial of his motion to suppress. He

was sentenced to 209 days time served. On appeal, Mr. Mikolon argues that the district court erred in refusing to suppress the incriminating statements he made after he was arrested but before being advised of his Miranda rights. The court found the statements admissible under the public safety exception to Miranda, see New York v. Quarles, 467 U.S. 649 (1984), notwithstanding the government's representation that it would not seek to admit the statements at trial. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the denial of the motion to suppress, finding any error harmless beyond a reasonable doubt.

Background

The relevant facts are not in dispute. On November 18, 2008, the United States Marshals Service learned that Mr. Mikolon, a fugitive wanted in West Virginia for failure to appear on sex charges, was staying in Elephant Butte State Park near Truth or Consequences, New Mexico. IV R. 87–89. Mr. Mikolon was a military veteran who had worked in the federal prison system, and according to the information received, obtained weapons, ammunition, and a large amount of camping and survival equipment before traveling to the park. Id. at 89. The marshals formed a team and devised a plan to arrest Mr. Mikolon. Id. at 88–89.

Upon arrival in Truth or Consequences, the marshals met with a park ranger who confirmed that Mr. Mikolon was staying in the park. Id. at 90. Deputy Marshal Byron Hollister conducted an initial sweep of the area and located Mr.

Mikolon. Id. at 122. At approximately 5:00 p.m., the marshals approached Mr. Mikolon's campsite in three vehicles. Id. at 90–91. Hollister, who was in the lead vehicle, stopped in front of Mr. Mikolon, jumped out of the vehicle, and ordered Mr. Mikolon to put his hands in the air and get on the ground. Id. at 123. Mr. Mikolon was near the door of his truck and was carrying a yellow bag. Id. at 123–24. The truck door was open and a gun was visible in the door pocket. Id. at 126. Mr. Mikolon complied with the orders and was placed in handcuffs. Id. at 123. The marshals later found a gun in the yellow bag. Id. at 124.

Once Mr. Mikolon was handcuffed, the marshals proceeded to secure the area. Id. at 162. They checked a nearby trailer, occupied by an older man, and ordered him to remain inside. Id. at 194–96. They also checked the shelter area where Mr. Mikolon's tent was located, and found no one else in the campsite. Id. at 162.

Meanwhile, Deputy Marshal John Hefley approached Mr. Mikolon and asked "if he had any other items in the truck, weapons, money, drugs, anything like that." Id. at 163. Mr. Mikolon responded that "he had weapons in the truck." Id. Hefley asked "Do you mind if I go ahead and go inside and get those weapons?" and Mr. Mikolon said "No." Id. Mr. Mikolon gave him directions as to where the guns were located. Id. at 164. The marshals seized a total of seven guns, including the gun in the yellow bag, and close to 1,000 rounds of ammunition. Id. at 103. At no point during the arrest was Mr. Mikolon advised

of his <u>Miranda</u> rights.  <u>Id.</u> at 205.

Over two years later, on January 13, 2011, Mr. Mikolon was charged with one count of possession of a firearm by a fugitive, 18 U.S.C. §§ 922(g)(2), 924(a)(2).  I R. 9.  He filed a motion to suppress all evidence seized from his vehicle and any statements made on November 18, 2008, and a motion to dismiss for pre-accusatory delay.  <u>Id.</u> at 15–21, 30–33.  In response to the motion to suppress, the government indicated that it would not seek to admit the post-arrest statements complained about in the motion.  <u>Id.</u> at 28.  The government, however, did intend to use statements made later that day along with all evidence seized from his vehicle.  <u>Id.</u>

The district court held a hearing on both motions, and in a written opinion, denied the motion to dismiss for pre-accusatory delay and granted in part and denied in part the motion to suppress.  <u>Id.</u> at 73–98.  The court granted the motion to suppress "with respect to [Mr.] Mikolon's statement . . . regarding the presence of money or drugs in his vehicle," but denied the motion "with respect to all other statements made by Mikolon."  <u>Id.</u> at 98.  The court held these statements admissible under the <u>Quarles</u> public safety exception to <u>Miranda</u>.  <u>Id.</u> at 95–96.

Mr. Mikolon entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress.  <u>Id.</u> at 99–106.  He was sentenced to 209 days time served.  <u>Id.</u> at 118.  This appeal followed.

Discussion

Mr. Mikolon's sole argument on appeal is that the district court erred in applying the Quarles public safety exception to find his pre-Miranda statements admissible. Aplt. Br. 6–7. He contends that his statements in response to the deputy marshal's questioning should have been suppressed, and thus, this court should reverse the district court's denial of his motion to suppress and remand the case to allow him the opportunity to withdraw his guilty plea. Id. "Whether facts support an exception to the Miranda requirement is a question of law." United States v. Lackey, 334 F.3d 1224, 1226 (10th Cir. 2003). Mr. Mikolon challenges the district court's ultimate ruling, not its factual findings. See Aplt. Br. 7. Thus, our review is de novo. See Lackey, 334 F.3d at 1226.

The district court relied on Quarles to deny Mr. Mikolon's motion to suppress. Under Quarles, an officer may question a suspect in custody without first giving the Miranda warnings if the questions arise out of "an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon." 467 U.S. at 659 n.8. The facts of Quarles bear repeating here. In Quarles, two city police officers encountered a woman who informed them that she had just been raped. Id. at 651. She told the officers that the rapist had a gun and had entered a nearby grocery store. Id. at 651–52. The suspect gave pursuit but one officer cornered the suspect in the store. Id. at 652. Upon frisking the suspect, the officer discovered that the suspect was wearing an

empty shoulder holster.  Id.  The officer handcuffed the suspect and asked him where the gun was *before* advising him of his Miranda rights.  Id.  The suspect nodded in the direction of some empty cartons and stated "the gun is over there." Id.  The officer discovered a loaded gun near the cartons.  Id.  The state courts suppressed the statement regarding the gun, but the Supreme Court reversed, concluding that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination."  Id. at 653, 657.

We have elaborated on the scope of Quarles in two recent decisions, Lackey and United States v. DeJear, 552 F.3d 1196 (10th Cir. 2009).  In Lackey, we applied the Quarles public safety exception to allow an officer to ask a suspect, "Do you have any guns or sharp objects *on you*," without first giving the Miranda warnings.  334 F.3d at 1227.  We reasoned that the question "addressed a real and substantial risk to the safety of the officers and [suspect]" because of the potential for injury when the suspect was searched or frisked.  Id.  In DeJear, we adopted the Sixth Circuit's standard under Quarles and held that

> for an officer to have a reasonable belief that he is in danger, at
> minimum, he must have a reason to believe (1) that the defendant
> might have (or recently have had) a weapon, and (2) that someone
> other than police might gain access to that weapon and inflict harm
> with it.

552 F.3d at 1201–02 (quoting United States v. Williams, 483 F.3d 425, 428 (6th Cir. 2007)).  We then applied this standard to the facts of DeJear: the suspect was

sitting in a car with two men, one of whom was holding a baseball bat, and when the officer arrived, the suspect attempted to stuff something in the seat and refused to comply with the officer's requests to show his hands. Id. at 1198, 1202. We held that the suspect's response to the officer's questioning about what he had been stuffing was admissible under Quarles. Id. at 1202.

Mr. Mikolon argues that neither Lackey nor DeJear is on point, see Aplt. Br. 15, and we agree. In Lackey, the officer asked the suspect about weapons on his person, see 334 F.3d at 1227, but here, the deputy marshal asked Mr. Mikolon, who was already handcuffed, whether there were any weapons in his truck. Thus, the officer safety concerns from Lackey do not apply with equal force. DeJear is also distinguishable because there the suspect had ignored the officer's orders to show his hands before the officer asked what he had been stuffing in the seat. See 552 F.3d at 1198. Mr. Mikolon, however, immediately complied with the deputy marshal's commands to put his hands in the air and get on the ground.

The government responds that concerns for public safety justified the deputy marshal's questioning. On this point, the government emphasizes (1) that the deputy marshals knew that Mr. Mikolon was armed and dangerous; (2) that another person was in the campground near Mr. Mikolon's campsite; and (3) that the questioning took place within the first sixty seconds of apprehension, before the deputy marshals could complete their protective sweep. Aplee. Br. 17–18. We are troubled by the government's argument for two reasons. First, the

- 7 -

argument assumes that others could access the truck but Deputy Marshal Hefley testified that at the time of his questioning, the crime scene was already under control. IV R. 169. Second, the argument would require us to expand the reach of Quarles beyond its original scope—a city grocery store where the suspect's holster was visibly empty—and erode Miranda protections for suspects in custody. Today, however, we need not decide whether Quarles applies to this precise situation because assuming *arguendo* that the district court erred, any error was harmless beyond a reasonable doubt.

The Supreme Court has instructed that a constitutional error may be harmless. Chapman v. California, 386 U.S. 18, 22 (1967). The government bears the burden "to prove beyond a reasonable doubt that an error is harmless." United States v. Miller, 111 F.3d 747, 751 (10th Cir. 1997). In United States v. Benard, 680 F.3d 1206 (10th Cir. 2012), we noted that "the government will very rarely be able to make this showing in the context of a conditional plea of guilty where the trial court erroneously fails to suppress evidence relating to one or more of the counts of conviction." Id. at 1213. We reasoned that an appellate court, in most situations, would be unable to determine "whether there is a reasonable possibility that the error [in failing to suppress] contributed to the [defendant's] plea." Id. (citing People v. Grant, 380 N.E.2d 257, 264 (N.Y. 1978)). As we explained, "a defendant's decision to plead guilty may be based on any factor inside or outside the record," and thus, "only the defendant is in a

position to evaluate 'the impact of a particular erroneous refusal to suppress evidence.'" Id. (quotations omitted). Returning to the facts of Benard, we held

> [o]n the basis of the record before us, we cannot conclude beyond a reasonable doubt that the district court's error did not contribute to Defendant's decision to plead guilty. The record does not indicate why Defendant decided to plead guilty, what other defenses or evidence he might have produced on his behalf, or how the altered bargaining positions of the parties might have affected his decision if his post-arrest statements had been properly suppressed.

Id. at 1214.

Recognizing our language in Benard, we nonetheless find that the record in this case permits us to conclude beyond a reasonable doubt that any error did not contribute to Mr. Mikolon's decision to plead guilty. The government unequivocally represented to Mr. Mikolon and the court that it would not seek to admit Mr. Mikolon's statements at trial. See I R. 28 ("The United States Will Not Seek to Admit the Defendant's Post-arrest Statements Complained About in Defendant's Motion [to Suppress]."); id. ("The government, as stated earlier, will not seek to introduce the statement(s) made by the Defendant at the arrest scene immediately after his arrest."). Here, we find it persuasive that, upon a motion to suppress, the "burden of showing admissibility rests, of course, on the prosecution." Missouri v. Seibert, 542 U.S. 600, 608 n.1 (2004) (quotation omitted); see United States v. Nelson, 450 F.3d 1201, 1210–11 (10th Cir. 2006) (burden on government to prove valid waiver of Miranda rights). By twice indicating that it would not seek to admit the challenged statements, the government took these statements 'off the

table.'  See IV R. 87–221.  In fact, the district court could have ignored the issue all together.  See, e.g., United States v. Oscar-Torres, 507 F.3d 224, 227 (4th Cir. 2007) (limit issues on appeal to statements government seeks to admit); In re Sealed Case 96-3167, 153 F.3d 759, 763 n.1 (D.C. Cir. 1998) (deny as moot motion to suppress when government indicated that it would not use statement in case-in-chief).  Such an outcome is only fair to a defendant, like Mr. Mikolon, who lacks a meaningful opportunity to argue that Quarles does not apply when the government barely raises the issue below.  See I R. 55 (citing DeJear *but only* in the automobile exception context).

To the extent Mr. Mikolon suggests that the government could have abandoned its promise not to use these statements, this is entirely speculative.  First, the record does not indicate that the government previously had broken its promises to the defendant.  Second, we find it reasonable to assume *and expect* that officers of the court, i.e., prosecutors, will stand by their promises.  See United States v. Liburd, 607 F.3d 339, 343 (3d Cir. 2010) ("Once prosecutors undertake such commitments, they are bound to honor them."); United States v. McKinney, 758 F.2d 1036, 1046 (5th Cir. 1985) ( "[A]greements between the Government and a defendant to forego the presentation of otherwise admissible evidence are enforceable . . . .").

We are further persuaded that any error was harmless by the otherwise strong

- 10 -

evidence against Mr. Mikolon.[1]  Mr. Mikolon's statement was only a small piece of the government's overwhelming evidence that Mr. Mikolon had possessed a firearm and ammunition.  When he was arrested, in addition to the weapon in plain view, he was carrying a pistol in a bag and was traveling with 6 guns and almost 1000 rounds of ammunition in his truck.  IV R. 103, 123–24, 127, 132–33, 170, 233.  The district court held that the evidence involving the guns and the ammunition was admissible, and Mr. Mikolon does not challenge that ruling.  I R. 84–94.  Moreover, Mr. Mikolon was traveling alone in a remote campground, and thus, could not even attempt to defend a possession charge on a theory that the guns were someone else's.  Id. at 97.

Considering these circumstances—the government's promise not to use the statement and the otherwise strong evidence against Mr. Mikolon—we conclude, beyond an reasonable doubt, that Mr. Mikolon would have pleaded guilty even if the trial court had suppressed his statement to Deputy Marshal Hefley.  Therefore, any error was harmless.

AFFIRMED.

---

[1]  The government's harmlessness argument did not address the impact of the other evidence regarding the weapons and ammunition found in the search or the fact that Mr. Mikolon was traveling alone.  Even though the government has not relied on this evidence, we can consider it sua sponte because the appellate record is relatively short and simple, the harmlessness of the error is certain, and reversal would simply result in an opportunity for Mr. Mikolon to re-plead.  See United States v. Torrez-Ortega, 184 F.3d 1128, 1136 (10th Cir. 1999).