**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3087

_____

United States of America

v.

Ernest Kyle Dyer,
                              Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No.: 1:17-cr-00226-001)
District Judge: Hon. Sylvia H. Rambo

_____

Submitted: September 16, 2022

(Filed: November 29, 2022)

Before:  KRAUSE, BIBAS, RENDELL, *Circuit Judges.*

Kenneth W. Mishoe
Tucker Arensberg
300 Corporate Center Drive
Suite 200
Camp Hill, PA 17011

*Counsel for Appellant*

Stephen R. Cerutti, II
Michael A. Consiglio
Carlo D. Marchioli
Office of the United States Attorney
Middle District of Pennsylvania
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RENDELL, *Circuit Judge*.

Ernest Dyer pleaded guilty to one count of possession of a firearm as a convicted felon under 18 U.S.C. § 922(g), preserving the right to challenge on appeal the District Court's refusal to suppress certain evidence under Federal Rule of Criminal Procedure 11.

Because the only evidence Dyer contends should have been suppressed was immaterial to his case, and admitting it was at most harmless error, we will affirm the District Court's suppression ruling. Therefore, we hold that Dyer has not prevailed on appeal for the purposes of Rule 11(a)(2) and will not be entitled to withdraw his plea. We will affirm.

## I.     Facts

Over the course of several weeks in the summer of 2017, a York, Pennsylvania woman told local officers and federal agents that her boyfriend, Ernest Dyer, had attacked her with a handgun, trafficked women, and sold drugs from the house both she and Dyer lived in, on Queen Street in York, Pennsylvania.

Based on these statements, Detective Mark Baker of the Northern York County Regional Police Department applied for a warrant to search Dyer's home for "[f]irearms, illegal drugs, [and] cell phones possessed or belonging to Ernest Dyer" after a search of his criminal history revealed that he, a felon, may have possessed a firearm in violation of 18 Pa. Cons. Stat. § 6105. App. 257-59. In the affidavit supporting the application, Detective Baker listed the information Dyer's purported girlfriend had provided to police about her altercation with Dyer, including the description of the firearm used to strike her. He also noted that, "during [the girlfriend's] interview [with the agents, the woman] disclosed there may be illegal drugs located in the residence." App. 259. A magisterial district court judge approved the search warrant for the aforementioned items.

Detective Baker and other law enforcement officers executed the search warrant the following day. In the

residence, they found Dyer, along with an alleged victim of Dyer's sex trafficking, Dyer's mother, and Dyer's son or stepson. The officers arrested Dyer, and, after some initial questioning, he directed the officers to a firearm that matched the description the girlfriend had provided. The officers continued to search the residence and seized, among other things, a "[b]ox containing green pills, drug packing material and ID" found on a shelf in Dyer's son's bedroom[1] (the "Box"). App. 297.

A few days later, based on information obtained during an interview with the alleged trafficking victim, Special Agent Ryan Anderson of the Bureau of Alcohol, Tobacco, Firearms and Explosives applied for and obtained another search warrant for Dyer's residence, garage, and the surrounding curtilage for drugs and drug paraphernalia, among other things. During the search, Special Agent Anderson found an unlabeled pill bottle that contained capsules, which were later identified as bath salts, in the location previously described to them. He searched the garage and seized digital scales with residue, which was later identified as cocaine, and plastic bags commonly used to package narcotics.

A few weeks after the second search, a grand jury returned a one-count indictment against Dyer for knowingly possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Several months later, the grand jury returned a superseding indictment that charged Dyer with three additional counts: possession of a firearm in

---

[1] Although neither the police nor FBI ever identified the nature of these pills, the trafficking victim told local and federal law enforcement officials that she believed they were iron supplements.

4

furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); criminal conspiracy to distribute and possess pentylone[2] with the intent to distribute in violation of 21 U.S.C. § 846; and possession of pentylone with the intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Before trial, Dyer moved to suppress the evidence seized during both searches of his residence. He claimed that these searches violated the Fourth Amendment because Detective Baker's and Special Agent Anderson's affidavits did not provide a sufficient basis for the magistrates to issue the respective warrants. After the District Court conducted an evidentiary hearing on the motion, it granted the motion in part and denied it in part.

Considering the first search, the District Court held that, although Detective Baker's initial affidavit provided probable cause to search Dyer's residence for firearms and cell phones, it did not establish probable cause to search for drugs. Accordingly, the Court determined that the warrant did not authorize the seizure of several pieces of evidence, including the Box. It next concluded that the Government could not invoke the good-faith exception to the warrant requirement because Detective Baker's affidavit was so devoid of facts suggesting the house contained drugs that the officers could not have reasonably relied on the warrant. Finally, the District Court considered whether the officers could have seized any of this evidence under the plain view doctrine. Although it

---

[2] Pentylone is a type of synthetic cathinone, a category of narcotics often called "bath salts." *See* Joseph A. Cohen, *The Highs of Tomorrow: Why New Laws and Policies Are Needed to Meet the Unique Challenges of Synthetic Drugs*, 27 J.L. & HEALTH 164, 165 (2014).

determined that this doctrine did not permit the officers to seize several pieces of evidence during the first search, the seizure of the Box did fall under the plain view doctrine, and so the officers' seizure of it was lawful.

The District Court declined to suppress any evidence seized during the second search, concluding that Special Agent Anderson's affidavit provided probable cause for the search, and that this affidavit did not rely on any of the excluded evidence from the first search, as it was based on an interview with a victim. Accordingly, the District Court refused to exclude the firearm and firearm accessories properly seized during the first search as well as the drugs, digital scales, and drug packaging material seized during the second search.

After the District Court's resolution of his motion to suppress, Dyer agreed to plead guilty. Under the plea agreement, he would plead guilty to the first count of his indictment, the violation of 18 U.S.C. § 922(g) (felon in possession of a firearm), and the Government would move to dismiss his indictment's remaining counts. Dyer also agreed to "waive[] the right to appeal [his] conviction and sentence, on the express condition that [he] reserve[d] the right to appeal the adverse suppression ruling issued by [the District Court]." App. 210.

The District Court accepted Dyer's conditional guilty plea and entered a judgment of guilty on the indictment's first count. After conducting a sentencing hearing, it sentenced Dyer to a term of imprisonment of 110 months on this count and dismissed the remaining charges.

Dyer timely appealed. The parties' initial briefing focused primarily on the propriety of the admission of the Box,

6

and we then requested, and the parties filed, supplemental briefing on the issues of materiality and harmless error.

## II.  Jurisdiction

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. §§ 1291 and 3742(a). We review a district court's order denying a motion to suppress under a mixed standard of review. *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010). We review findings of fact for clear error, but exercise plenary review over legal determinations. *Id.* "Because the District Court denied the suppression motion, we view the facts in the light most favorable to the Government." *United States v. Garner*, 961 F.3d 264, 269 (3d Cir. 2020).

## III.  Analysis

### A. Motion to Suppress

The sole issue raised by Dyer on appeal is whether the District Court erred when it held that the plain-view exception to the warrant requirement permitted law enforcement to seize the Box from a shelf in Dyer's residence. In general, the Fourth Amendment requires that law enforcement officers seize evidence pursuant to a "warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). This requirement, however, is subject to several exceptions, including the plain view doctrine. *See Horton v. California*, 496 U.S. 128, 133-37 (1990). Under the plain view doctrine, officers may seize incriminating evidence they come across if (1) they have not "violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) "the incriminating character of the evidence [is]

7

immediately apparent"; and (3) they "have a lawful right of access to the object itself." *United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994) (cleaned up). The Government bears the burden of establishing that the plain view doctrine applies to the seizure in question. *See United States v. Bey*, 911 F.3d 139, 145 (3d Cir. 2018) ("Warrantless searches and seizures are presumptively unreasonable unless the Government satisfies its burden of establishing that one of the exceptions to the warrant requirement applies."). Regarding the contents of the Box, the police may search any container within a home as long as "it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." *United States v. Crooker*, 688 F.3d 1, 8 (1st Cir. 2012) (internal quotation marks omitted); *accord United States v. Newman*, 685 F.2d 90, 92 (3d Cir. 1982); *United States v. Ross*, 456 U.S. 798, 821 (1982).

The District Court held that the seizure fell within the plain view doctrine. Regarding the plain view doctrine's first requirement, the Court determined that the valid search warrant for Dyer's residence authorized law enforcement officers' presence in Dyer's home. With respect to the second requirement, the District Court credited testimony of the law enforcement officers involved with the search that the incriminating nature of the Box and its contents "was immediately apparent." App. 44. Turning to the third requirement, the Court noted that the evidence in the record, although it lacked detail, indicated that the Box was on a shelf when the officers came across it. Based on this location, the Court determined that "it was more likely than not that the [officers] were able to spot [the Box and its contents] merely by conducting a quick scan" of the bedroom. App. 45. Therefore, it found that the officers had a right to access the

Box and its contents during a protective sweep incident to Dyer's arrest.

Before us, Dyer argues that the District Court erred in determining that law enforcement officers could lawfully access the Box and its contents. In essence, he contends that since the record lacked any specific information about the Box—what it looked like, what the officers thought it might contain, how they came across it, and whether they manipulated it in any way to view its contents—there was not sufficient evidence for the Court to conclude that the officers had a right to seize or access the Box. The Government in turn argues that because the officers had a valid warrant to search for cell phones and firearms, they were permitted to search in any location where these items might be found—and a box that contained packaging material, a container of pills, and an ID could have instead contained a cell phone.

We agree that there is insufficient evidence in the record to support the District Court's conclusion that the Box and its contents were seized as part of a cursory protective sweep. The record indicates that the Box was located on a "shelf" in Dyer's son's bedroom. App. 297. But that is all. It does not indicate, for instance, where on the shelf the Box was located—and as such, whether it would have been spotted during a "quick and limited search" of the premises for safety purposes. *See Maryland v. Buie*, 494 U.S. 325, 327 (1990). Nor does it indicate whether the officers could see inside the box—and thus, the incriminating material within—from a quick scan.

There is more evidence in the record, however, to support a different theory for why the officers had "a lawful right of access" to the Box and its contents. *Menon*, 24 F.3d at 559. That is because the District Court properly determined

9

that the first warrant authorized a search for firearms and cell phones, so the officers had a right to search the bedroom in which the Box was found for those items. This theory has some force: although the record leaves many questions unanswered, it does indicate that the Box was large enough to fit "green pills, drug packaging material, and [an] ID." *See* App. 297. One might reasonably infer from this that the Box was large enough to fit a cell phone, and whatever the officers' subjective intent, the plain view doctrine only requires that the Box *could have* contained an item, such as a phone, for which the officers had a valid warrant to search. *See Horton*, 496 U.S. at 129 (application of plain view doctrine does not "depend upon the officer's subjective state of mind").

Fortunately, we need not reach this question or rest on inference, because assuming the Box should have been suppressed, Dyer is not entitled to relief. In his brief, he urges that if we agree with him that the District Court erred in not suppressing the Box—the only issue he has raised on appeal—he has prevailed under Rule 11 and would be entitled on remand to withdraw his plea. But the Government counters that, because the Box was not material to the charges against him, we should adopt the approach of the Ninth Circuit in *Lustig*, which applied harmless error principles in the Rule 11(a)(2) context. *United States v. Lustig*, 830 F.3d 1075, 1087 (9th Cir. 2016). The *Lustig* approach requires us to ask whether an erroneous ruling was material to the defendant's decision to plead guilty, and if the answer is no, then we would not reverse the District Court's order, and the defendant would not be permitted to withdraw his plea. *See id.* at 1091. Under this theory, the defendant does not "prevail" under Rule 11 unless evidence wrongly admitted had a material effect on his decision to plead guilty.

10

Both of these arguments have visceral appeal. Dyer is right that when a defendant makes a conditional plea and challenges a ruling, then he has prevailed—at least in some sense—if the reviewing court agrees. And the Government is correct that applying a harmless error test in assessing whether a defendant has prevailed makes sense. But the important question is: Will we affirm or reverse the District Court? Only if we *reverse* has Dyer prevailed, and we will reverse only if the evidence erroneously admitted was material to the defendant's decision to plead guilty, such that the District Court's error was not harmless.

Some of the cases that bear on this issue refer to the materiality of the evidence as relevant in assessing whether the defendant has "prevailed." *See, e.g.*, *United States v. Leake*, 95 F.3d 409, 420 n.21 (6th Cir. 1996); *United States v. Peyton*, 745 F.3d 546, 557 (D.C. Cir. 2014). And some also discuss whether the District Court's error was harmless—which puts a slightly different, yet jurisprudentially common, twist on the issue—and brings materiality back into play. *See, e.g.*, *United States v. Benard*, 680 F.3d 1206, 1213-14 (10th Cir. 2012); *United States v. Mikolon*, 719 F.3d 1184, 1188 (10th Cir. 2013); *Lustig*, 830 F.3d at 1086.

In the context of a conditional guilty plea, the harmless error standard is "whether the government has proved beyond a reasonable doubt that the erroneously denied suppression motion did not contribute to the defendant's decision to plead guilty." *Id.* at 1087; *accord United States v. Molina-Gomez*, 781 F.3d 13, 25 (1st Cir. 2015); *Peyton*, 745 F.3d at 557; *Benard*, 680 F.3d at 1213-14; *Leake*, 95 F.3d at 420 n.21; *United States v. Burns*, 684 F.2d 1066, 1076 (2d Cir. 1982). This is essentially the other side of the materiality coin.

None of the evidence contained in the Box pertains to the count to which Dyer pleaded guilty, being a felon in possession of a firearm, nor did it add anything to the Government's case. It did not support the charges in any meaningful way. The Government has never asserted that the seized pills were narcotics—the record suggests they were iron supplements. Detective Baker testified that the ID was possible evidence of a crime, but it is unclear how it provides evidence of Dyer's criminal activities. The drug packaging material has the most obvious relationship to the offenses for which Dyer was charged, but the Government had significantly more relevant and probative evidence that Dyer committed drug trafficking offenses, namely the bath salts, digital scales with residue from narcotics, and branded drug packaging materials seized during law enforcement's second search, which were clearly going to be presented to jury, and which Dyer did not challenge on appeal. The Box added absolutely nothing to the Government's case. It could not reasonably have contributed to Dyer's decision to plead guilty.

## B. Applicability of Federal Rule 11 of Criminal Procedure

Recently, some courts have agonized over the concept of harmless error in the context of guilty pleas, urging that courts cannot assess the defendant's mindset and thus should not attempt to determine harmlessness in the guilty plea setting. *See, e.g.*, *Molina-Gomez*, 781 F.3d at 25; *Benard*, 680 F.3d at 1213-14. Dyer urges us to adopt this view, but we cannot.

In *Benard*, the Tenth Circuit grappled with whether a court could *ever* presume to know, in the case of erroneously admitted evidence, whether a defendant would have made the

12

same calculation to plead guilty absent such a ruling, where the record did not reflect "why Defendant decided to plead guilty, what other defenses or evidence he might have produced on his behalf, or how the altered bargaining positions of the parties might have affected his decision if [the erroneously admitted evidence] had been properly suppressed." 680 F.3d at 1214. The court cited approvingly and at length to two state supreme court decisions, *People v. Grant*, 380 N.E.2d 257 (N.Y. 1978), and *People v. Hill*, 528 P.2d 1 (Cal. 1974); specifically, for the proposition that "[t]here simply is no intelligent means of assessing the impact of a particular erroneous refusal to suppress evidence." 680 F.3d at 1213 (citing *Hill*, 528 P.2d at 29).[3]

But, as then-Judge Gorsuch pointed out in his partial dissent in *Benard*, these courts relied on state court reasoning that preceded Federal Rule 52 of Criminal Procedure, which incorporated the harmless error standard analysis in all federal criminal proceedings. "[T]he Supreme Court has repeatedly told us that Rule 52(a) must be respected," and "has even more specifically directed us to apply harmless error analysis when a district court fails to inform a defendant of all his legal rights before accepting his guilty plea—a circumstance sharing the very same sort of epistemological challenges as this case." *Id.* at 1216 (Gorsuch, J., concurring in part and dissenting in part) (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004)).

---

[3] Tellingly, the Tenth Circuit retreated from its majority position in *Benard* just one year later, in *Mikolon*, when it found "that the record in this case permits us to conclude beyond a reasonable doubt that any error did not contribute to [Defendant's] decision to plead guilty." 719 F.3d at 1188.

13

Far from requiring an assessment of the actual mental state of a defendant, harmless error employs a reasonable, objective examination of the evidence as it related to the charges against the defendant. Thus, Judge Gorsuch proceeded to analyze the materiality of the evidence that was wrongly admitted, finding that even without the wrongly admitted evidence, the Government had ample other evidence to prove its case, and the defendant had "rejoin[ed] with no reason—rational or even irrational—why the admission of [the evidence that should have been suppressed was] at all relevant to him in making his plea decision."[4] *Id*. at 1217. Judge Gorsuch then concluded, "on the evidence and argument before us, the government has met its high burden of showing harmless error and I would affirm." *Id.*

The Sixth Circuit has reached a similar conclusion, albeit without explicitly employing a harmless error analysis. In *Leake*, the court considered "the effect of a *partially* successful appeal" on a defendant's right to withdraw a conditional guilty plea when the defendant was "successful in excluding what appear[ed] to be the most damning evidence against him." 95 F.3d at 420. The court held that he was entitled to withdraw his plea because the evidence that he managed to suppress on appeal "would have had a material effect on the defendant's decision to plead guilty." *See id.* at 420 n.21.

---

[4] Similarly, here, too, as the Government points out in its supplemental briefing, Dyer has not advanced any argument as to how the allowance of the Box into evidence could have influenced his decision to plead guilty.

If Rule 52(a) is to mean what it says, in the context of Rule 11, the Defendant cannot prevail if the error in admitting the challenged evidence was harmless. In *Dominguez Benitez*, the Supreme Court noted that only "certain structural errors undermining the fairness of a criminal proceeding as a whole" require automatic reversal. 542 U.S. at 81. "Otherwise, relief for error is tied in some way to prejudicial effect." *Id.* Prejudicial effect incorporates the consideration of harmlessness.

So, here, because the Box did not support the charges against Dyer in any meaningful way, and we can reasonably conclude that it could have had no effect on the Defendant's decision to plead guilty, the District Court's error in admitting it was harmless and we will affirm. Therefore, Dyer has not prevailed on appeal and is not entitled to withdraw his plea under Rule 11.