**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 21-2791, 22-1481, & 22-1588

_____

UNITED STATES OF AMERICA

v.

JOHN GUNTHER, Appellant in 21-2791
WILLIAM ROLAND, a/k/a "CHILL', Appellant in 22-1481
TALEAF GUNTHER, a/k/a "Leafy", a/k/a "L", Appellant in 22-1588

_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. Crim. No. 1-17-cr-00488)
District Judge: Honorable Renée Marie Bumb

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 28, 2023.

Before: KRAUSE, AMBRO, and SMITH, *Circuit Judges*

(Filed: October 16, 2023)

_____

**OPINION**[*]

_____

KRAUSE, *Circuit Judge*.

In this consolidated appeal, Appellants John Gunther; his brother, Taleaf Gunther;

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

and William Roland challenge their convictions and sentences for various crimes related to their drug-trafficking operation in Camden, New Jersey. Because we see no error in the District Court's rulings, we will affirm.

## I. DISCUSSION[1]

Appellants raise a host of issues on appeal. Between the brothers, John Gunther maintains that his conviction was supported by insufficient evidence; both John and Taleaf Gunther argue that the District Court erred in its instruction to the jurors about how they should determine the relevant quantity of drugs; and Taleaf alone says the District Court wrongly denied his motion to suppress several intercepted phone calls. For his part, Roland argues that the District Court erred by allowing the Government to present cumulative testimony, refusing to issue a curative instruction, and denying his motion for a new trial. And all three defendants challenge their sentences as unreasonable on various grounds. We address these arguments in turn.[2]

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[2] We do not consider Roland and John Gunther's argument that the District Court erred in denying their requests for a duress instruction. Roland asked for the instruction, but his counsel later withdrew the request, so his argument is waived. **J.A. 1890.** Gunther, on the other hand, appears to have forfeited the argument, having failed to raise it at trial. The trial transcript records Roland's counsel as raising the duress instruction and Gunther's attorney as making the substantive argument on its behalf, J.A. 1803, but this was a typo. Roland's brief says that the court reporter erred in attributing the argument's substance to Gunther's counsel, **Roland Br. at 22–23,** and the Government agrees**, Resp. Br. at 23–24**. The trial transcript shows the Judge directly asking Roland's counsel to explain the grounds for a duress charge. Moreover, in answering, Gunther's counsel is recorded as claiming that "there was no evidence of any preexisting relationship between my client and the other clients," which would be an absurd argument for John Gunther to make about a group that included his brother Taleaf. J.A. 1803-04. We thus conclude that John Gunther did not ask for a duress instruction at trial and so forfeited the issue on appeal.

**A. Sufficiency of the Evidence**[3]

John Gunther raises three challenges to the sufficiency of the evidence supporting his convictions under 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(B), and 846. None is persuasive.

First, John faults the Government for proving up the net weight of the substances attributed to him containing cocaine base by extrapolating from randomly tested samples instead of testing each item. **J. Gunther Br. 12–13, 40–42.** But there is no requirement of individual testing. To the contrary, a drug quantity may be extrapolated from a test sample so long as "there is an adequate basis in fact for the extrapolation" and "the quantity was determined in a manner consistent with accepted standards of reliability." *United States v. McCutchen*, 992 F.2d 22, 25–26 (3d Cir. 1993). Both criteria are met here because, as the forensic chemist testified at trial, the tests conducted on the drugs followed a standard and accepted methodology for drug testing and extrapolation. **J.A. 1365–68.**

John's second argument is that the Government failed to prove that he knowingly joined or had specific intent to further the drug conspiracy. **J. Gunther Br 11, 14, 25.** Yet voluminous evidence in the trial record shows otherwise. Testimony established that John managed the drug operation and controlled the drug set's crack. **J.A. 1211, 1217–18, 1270, 1300–01, 1335**. Seized mail and testimony established that although the Blackwood, New

---

[3] Where, as here, a criminal defendant fails to move for a judgment of acquittal based on the sufficiency of the evidence at trial but raises such argument on appeal, we review the sufficiency claim for plain error, meaning we will affirm if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jabateh*, 974 F.3d 281, 300 (3d Cir. 2020) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Jersey apartment—where a search revealed substantial evidence of drug trafficking—was not in his name, John resided there with his girlfriend, *id*. **464–65, 486–87, 499, 528–29, 582, 1657–58, 1682, 1764**. John's intercepted phone calls, too, showed that he was a sales contact and central part of the conspiracy, *id*. **2274, 2278–79, 2299**, and that he referred to the Blackwood apartment as "my house" and indicated to others that he lived there. J.A. 2352–53. In view of this evidence, it cannot be said that no "rational trier of fact could have found the essential elements of [John Gunther's convictions] beyond a reasonable doubt." *Jabateh*, 974 F.3d at 300.

The trial record also defeats John's third claim, which is that the Government did not prove he possessed with intent to distribute furanyl fentanyl and heroin on February 22, 2017. **J. Gunther Br. 43; J.A. 1217–18**. The video surveillance footage from that day showed both John and Taleaf on the block of 1700 Filmore shortly before Taleaf left to sell drugs to a confidential informant. **J.A. 891**. Pen register intercepts showed that immediately after Taleaf received the informant's order, Taleaf called a number associated with John Gunther. **J.A. 907.** And surveillance footage established that, after the sale, Taleaf returned to 1700 Filmore and interacted with John. **J.A. 902–03.** The jury was properly instructed about accomplice liability on this count, **J.A. 1925–26,** and on the evidence presented, a reasonable jury could find John Gunther guilty of aiding and abetting the distribution of furanyl fentanyl and heroin.

## B. Purity Instruction[4]

---

[4] This Court exercises plenary review over the legal standard articulated in a jury instruction, "but review[s] the wording of the instruction, *i.e.*, the expression, . . . for abuse

4

In their appeals, John and Taleaf Gunther both argue that the District Court erred by instructing the jury that "when determining whether the Government has proven beyond a reasonable doubt the specific weight of the controlled substance, you are to consider the entire weight of the mixture and substance including any inactive ingredients, cutting agents, or diluents." J. Gunther Br. 46-47 (quoting J.A. 1884)**; *see also* T. Gunther Br. 19**. The brothers maintain that this "purity charge diluted the government's burden of proof beyond a reasonable doubt" and thus reversal is required. J. Gunther Br. 46.

We will affirm a jury charge if it "fairly and adequately submit[s] the issue[] in the case to the jury." *United States v. Petersen*, 622 F.3d 196, 203 (3d Cir. 2010) (quoting *United States v. Hart*, 273 F.3d 363, 373 (3d Cir. 2001)). Here, there is no question that the District Court's instruction fairly and adequately stated the law. The relevant statute, 21 U.S.C. § 841(b)(1)(A)(iii), criminalizes certain acts involving "280 grams or more of a mixture or substance described in clause (ii) which contains cocaine base." Clause (ii), in relevant part, refers to a "mixture or substance containing a detectable amount" of cocaine. *Id.* § 841(b)(1)(A)(ii)(II). Clearly, the statute is concerned with the total weight of the substance, not just the weight of the pure drug it contains. *Chapman v. United States*, 500 U.S. 453, 460 (1991). The District Court's instruction accurately described this statutory scheme.

---

of discretion." *United States v. Lee*, 359 F.3d 194, 203 (3d Cir. 2004) (Alito, J.) (quoting *United States v. Yeaman*, 194 F.3d 442, 452 (3d Cir. 1999)). Where, as here, no objection is made to an instruction at trial, we review the instruction for plain error. *United States v. Savage*, 970 F.3d 217, 273 (3d Cir. 2020).

## C. Motion to Suppress[5]

Taleaf Gunther argues that the District Court should have granted his motion to suppress several intercepted phone calls. **T. Gunther Br. 9.** He contends that he was impelled to make the calls by an unconstitutional stop-and-frisk, and that, therefore, the recordings should have been excluded as "fruit of the poisonous tree." **Id. at 15.** We disagree. Law enforcement officers lacking a warrant may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). The Government searched 1700 Filmore based on months of surveillance, including evidence from the morning of the search showing that drug sales were taking place. **J.A. 1103–07.** Considering this ample evidence alongside testimony that the Judge deemed "credible" and "corroborated," the District Court did not err in finding that law enforcement had an articulable and reasonable suspicion of criminal activity on Filmore Street, and that twenty to thirty minutes was a reasonable duration for a stop under the circumstances. **J.A. 1136, 1140.** *See United States v. Sharpe*, 470 U.S. 675, 685 (1985) ("[O]ur cases impose no rigid time limitation on *Terry* stops); *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1192 (3d Cir. 1995) (fifteen-minute detention during

---

[5] "We review a district court's order denying a motion to suppress under a mixed standard of review . . . review[ing] findings of fact for clear error, but exercis[ing] plenary review over legal determinations." *United States v. Dyer*, 54 F.4th 155, 158 (3d Cir. 2022). "[W]e view the facts in the light most favorable to the Government." *Id*. (quoting *United States v. Garner*, 961 F.3d 264, 269 (3d Cir. 2020)).

a drug raid was reasonable).

Even if Taleaf's detention was unconstitutional, it did not taint the phone calls. **J.A. 1141.** *See United States v. Pelullo*, 173 F.3d 131, 136 (3d Cir. 1999). In the one call in which he discusses being stopped, Taleaf voices distress over co-conspirators' arrests, not his own detention—which, again, was lawful. **J.A. 2321.** In considering the facts surrounding Taleaf's phone calls, then, the District Court did not commit plain error, and in exercising plenary review over its decision to deny Taleaf's suppression request, we affirm.

### D. Roland's Abuse of Discretion Claims[6]

Roland asserts that the District Court abused its discretion by (1) allowing the Government to present testimony that was "unnecessarily cumulative" under Federal Rule of Evidence 403, Roland Br. 23; (2) by declining to issue a curative instruction during the Government's rebuttal summation**, Roland Br. 15**; and (3) by denying his motion for a new trial**, Roland Br. 26**. In our view, none of these rulings constitutes an abuse of discretion.

First, Roland challenges the testimony of Joseph Eden, a K-9 officer, as cumulative evidence that merely repeated the testimony of FBI Special Agent Dustin Poulin. **Roland Br. 25**. "Evidence is 'cumulative' when it adds very little to the probative force of the

---

[6] We review for abuse of discretion all three of the District Court actions that Roland challenges. *See United States v. Versaint*, 849 F.2d 827, 831 (3d Cir. 1988) (admitting or excluding evidence); *Petersen*, 622 F.3d at 207 n.7 (declining to give proposed jury instructions); *United States v. Jasin*, 280 F.3d 355, 360 (3d Cir. 2002) (denial of motion for new trial).

other evidence in the case, so that . . . its contribution to the determination of truth would be outweighed by its contribution to the length of trial." *United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002) (quoting *United States v. Williams*, 81 F.3d 1434, 1443 (7th Cir. 1996)). That is not the case here, where Agent Poulin's credibility had been impeached on cross-examination. **J.A. 593.** Officer Eden's testimony was introduced partly to bolster Agent Poulin's credibility, and it consumed just over twenty minutes of a multi-day trial. **J.A. 589–607**. The District Court thus acted well within its especially broad discretion to admit the testimony under Rule 403. *United States v. Sussman*, 709 F.3d 155, 173 (3d Cir. 2013).

Second, Roland maintains that the District Court should have given a curative instruction because the Government's summation rebuttal "wrongly impressed upon the jury that counsel had intentionally attempted to deceive them as to the law governing the case." Roland Br. 15. In response to defense counsel's argument that Roland was not part of the drug conspiracy because he didn't share "an intention to further [its] goals," J.A. 1978, the prosecutor said: "[I]f Judge Bumb instructs you that as a matter of law, every member of a co-conspiracy has to be best friends with everybody else, well, then, I guess you go back there and find them all not guilty. But she's not going to instruct you on that because that's not the law. [Roland's counsel] knows that." J.A. 2032.

Roland's lawyer did not object. Later, after the prosecutor said that John's attorney "ignore[d] pretty much all of the facts in this case in a pretty amazing quantity," the Judge summoned counsel to a sidebar, where she admonished the Government for "attacking the integrity of the [defense] attorneys" and urged the prosecutor to rephrase her arguments "in

8

terms of the defendant, not the attorneys." J.A. 2033–34.  Roland's attorney then requested a curative instruction, which the District Court declined to give.  **J.A. 2034.**

The Court did not abuse its discretion in doing so.  The Supreme Court has said that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone," *United States v. Young*, 470 U.S. 1, 11 (1985), but only when those comments can be said to have "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Darden v. Wainwright*, 477 U.S. 168, 180–81 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Here, the Government's comment about Roland's counsel was isolated, and however ill-phrased, it was not gratuitous, as it was responding to the counsel's claim that Roland was not part of a conspiracy.  In a supplemental opinion, the District Court affirmed that it was legitimate for the government to argue that a lack of friendship among co-conspirators does not necessarily mean there was no conspiracy and that its warning against ad hominem attacks was "well received" and heeded by the Government, which had presented "overwhelming" evidence against Roland.  Suppl. Op. to Prior Order at 8, *United States v. Roland*, No. 1:17-cr-00488-RMB-2 (D.N.J. July 13, 2022), ECF. No. 329.  With these considerations in mind, we hold that the District Court did not abuse its discretion.

Roland's third argument is that the District Court abused its discretion in denying his motion for a new trial because the guilty verdict was contrary to the weight of the evidence.  **Roland Br. 26.**  A district court may grant such a motion "only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004–05 (3d

9

Cir. 2008) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). We have held that new trial motions "are not favored" and should be "granted sparingly and only in exceptional cases." *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003).

This is not one of those cases. As noted above, the District Court found that "overwhelming evidence"—including drug packaging and residue discovered at Roland's apartment, Roland's drug sales to confidential sources, and his intercepted phone calls and text messages—supported Roland's conviction. Suppl. Op. at 8. It properly exercised its discretion in reaching this conclusion.

### E. Reasonableness of Sentences[7]

Finally, Roland and the Gunthers challenge their sentences' reasonableness.[8] "[I]f

---

[7] We review a sentence's procedural and substantive reasonableness for abuse of discretion. *United States v. Woronowicz*, 744 F.3d 848, 851 (3d Cir. 2014).

[8] John Gunther challenges the four-level leadership enhancement to his sentence. But the District Court did not abuse its discretion in applying the leadership enhancement to him based on the evidence presented at trial, **J.A. 2156–2157,** and, as a career offender, he would be subject to the same Guidelines range of 360 months to life—even if the four-point leadership penalty were subtracted. U.S.S.G. § 4B1.1(b) (Level 37). Therefore, we need not consider his objection to the leadership enhancement. *United States v. Abdullah*, 905 F.3d 739, 749–50 (3d Cir. 2018).

Neither did the District Court abuse its discretion in applying a four-level leadership enhancement to Taleaf Gunther's sentence. **Suppl. App. 244–46.** However, it did err in not considering him a career offender, but that error was harmless. The District Court held that Taleaf's prior state conviction for aggravated assault under N.J. Stat. Ann. §. 2C:12-1(b)(1) did not qualify as a predicate under the Sentencing Guidelines. **Suppl. App. 225–27.** We have since clarified that it does qualify. *See United States v. Brasby*, 61 F.4th 127, 142 (3d Cir. 2023). In any event, career-offender status would make no difference to Taleaf's sentence, because the applicable offense level for his convictions under Chapters Two and Three of the Sentencing Guidelines was higher than the applicable career-offender guideline, U.S.S.G. § 4B1.1(b), so Taleaf's guidelines range would be 360 months to life without the enhancement. *See United States v. Isaac*, 655 F.3d 148, 158 (3d Cir. 2011).

10

the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

All three Defendants argue that the amounts of drugs attributed to them for sentencing purposes were insufficiently proven, J. Gunther Br. 49; T. Gunther Br. 29; Roland Br. 29, but we disagree. We have recognized that, "in calculating the amounts involved in drug transactions, some degree of estimation must be permitted," although "mere speculation" is forbidden. *United States v. Collado*, 975 F.2d 985, 998 (3d Cir. 1992). The evidence that a district court relies on in making its calculation need not be admissible at trial, but it must "have sufficient indicia of reliability to support its probable accuracy." *United States v. Freeman*, 763 F.3d 322, 337 (3d Cir. 2014) (quoting *United States v. Brothers*, 75 F.3d 845, 848 (3d Cir. 1996)). We review a district court's findings of fact regarding quantity of drugs for clear error. *Id.*

John and Roland (and, by incorporation, Taleaf) claim that the District Court looked only to the uncorroborated testimony of one cooperating witness in calculating the amount of drugs involved in the transaction. **J. Gunther Br. 50; Roland Br. 30; T. Gunther Br., 29.** Not so. In addition to the testimony, the Court considered intercepted calls, law enforcement testimony, surveillance footage, the seized drugs, and lab reports. **Suppl. App. 232–36.** The Court did not commit clear error in finding this evidence a sufficiently reliable basis for 1) estimating the total amount of drugs involved in the conspiracy and 2) concluding that as members of an established drug conspiracy, Appellants reasonably

11

could have foreseen the amounts attributed to them. *See United States v. Perez*, 280 F.3d 318, 353 (3d Cir. 2002) ("[A] defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.") (quoting U.S.S.G. § 1B1.3, cmt. n.2).

John Gunther also contests the substantive reasonableness of his sentence, but he cannot cross that exceedingly high threshold. **J. Gunther Br. 54–56.** In reviewing for substantive unreasonableness, we consider the totality of the circumstances, and "we will affirm . . . unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568. The District Court offered a thorough explanation of its decision**, J.A. 2184–92,** that demonstrated a "rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Seibert*, 971 F.3d 396, 399–400 (3d Cir. 2020) (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)). We therefore hold that the District Court did not abuse its discretion in imposing John's sentence.

## II.      CONCLUSION

For the foregoing reasons, we will affirm Appellants' convictions and sentences.